PER CURIAM.
This is an appeal from a decree vesting title to real estate in the appellees. We affirm.
Ozvelt Luke filed suit for declaratory judgment seeking a declaration that he and other heirs of B.L. and Nancy Luke are the owners of eighty acres of land in Randolph County. Defendants Joe Harrell Mote and wife Peggy Mote claim all of the disputed acreage south of a creek, and defendants Terry Lovvorn and wife Sherry Lovvorn claim all of the disputed tract north of the creek.
There is evidence to support the trial court’s finding that the land was sold by W.P. Sewell to B.L. Luke and Nancy Luke in 1918. The Lukes executed a purchase *1363 money mortgage to W.P. Sewell at that time. The mortgage had a maturity date of 1922. Sometime in 1939 or 1940, W.P. Sewell, with the aid of the sheriff, ousted the Lukes because of default on the terms of the mortgage. The Lukes paid taxes on the property up until 1940. The trial court found that, following the ouster, W.P. Se-well and his successors have been in open, notorious, hostile, exclusive, peaceable, and continuous adverse possession of the property under claim of right and have paid taxes thereon for more than thirty-five years. Defendants Mote and Lovvorn are successors in title from Sewell.
The appellant contends that the trial court erred in vesting title in the Motes and the Lovvorns. We cannot agree. The record is replete with evidence to support the trial court’s finding of fact. In fact, there is no dispute in the record that the ouster by Sewell took place more than thirty-five years before this action was commenced, and there is evidence to support the court’s finding that Sewell and his successors have claimed the land and have been in actual possession since that time. In fact, the plaintiff, Ozvelt Luke, testified that the tax collector has refused to accept payment of taxes on the land by the Lukes since 1941. He testified that the Sewells had directed the tax collector to refuse payment by the Lukes. The following testimony by Mr. Luke supports the trial court’s holding:
“Q. Now, my question is what did the Luke family do with that property between 1942 and 1950?
“A. Nothing.
“Q. They didn’t even go on it, did they?
“A. Right.
“Q. What did the Luke family do with that property between 1950 and 1960?

“A. We didn’t do nothing with it.
“Q. You didn’t even go on it, did you, between 1950 and 1960?
“A. No.
“Q. What did the Luke family do with the property between 1960 and 1970?
“A. In 1960 and 1970 not anything.
“Q. You didn’t even go on it, did you?
THE COURT: You can shorten it.
Say what have you done since 1942.
“Q. For the last 42-40 years the Luke family has not been on that property, have they?
“A. Scared of a rifle because the reason why we hadn’t been on it is scared of a rifle. That’s why we ain’t been on it.
“Q. My question is the Luke family has not been on this 80 acres of land for the last 40 years, have they?
“A. No.”
The fact of ouster by Sewell was not disputed by Luke. His testimony alone is sufficient to permit the trial court’s conclusion that the Sewells were in possession and that the holding was hostile to the Luke’s interest. More than twenty years have lapsed, that possession ripened into title and constitutes a bar to the Lukes’ claim. The trial court’s reliance on Bozeman v. Bozeman, 82 Ala. 389, 2 So. 732 (Ala.1886), was appropriate:
“The law of Alabama is well settled that the lapse of twenty years will operate as a positive bar to the enforcement of every character of legal right in the courts of this state, unless there has been, within that period of time, a recognition or admission of some material fact on which the right in question may be adjudged to rest, and which therefore, keeps it alive and in force. This doctrine of prescription or repose can not be rebutted.”
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.